IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBIN ELLIOTT                              *
            Plaintiff
                                           *
    v.                                            CIVIL ACTION NO.  DKC-08-2159
                                           *
LINDA WILLIAMS, et al.
            Defendants                     *
                              ******

## MEMORANDUM

On August 18, 2008, the court received Plaintiff Robin Elliott's civil rights complaint

seeking injunctive relief and compensatory and punitive damages filed pursuant to 42 U.S.C.  §

1983.  Elliott alleges that prison officials subjected him to excessive force on two separate occasions

and that supervisory officials failed to protect him from correctional employees.  Elliott further states

that his mail was tampered with, his property lost, and he was harassed and threatened by a

conspiratorial group of correctional employees. Paper No. 1.

Defendants[1] filed a Motion for Summary Judgment, arguing that the Complaint should be

dismissed due to Elliott's failure to exhaust administrative remedies.  Defendants also address the

merits of Plaintiff's complaints.  Paper No. 24.  Plaintiff has filed an opposition. Paper No. 32.  No

hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons stated below, the

dispositive motion filed by Defendants, treated as a motion for summary judgment, will be granted

in part and denied in part.

---

[1] Defendants Captain Holland, D. Whitaker, Sgt. Perry and Lt. Faison have not been properly served with the Complaint.  For the reasons that follow, the court finds that had these Defendants properly been served, they would be entitled to summary judgment.

**Background**

Elliott alleges that on November 6, 2006, he was called into the sergeant's office.   An altercation ensued between Plaintiff and Defendant Linda Williams.  Plaintiff states that after he was taken down and handcuffed behind his back, Williams hit him in the eye, using a pair of handcuffs like brass knuckles, and kicked him repeatedly in the head, back and kidney.  Plaintiff states that Sgt. Taylor failed to stop Williams' assault on Plaintiff.  Paper No. 1.   Plaintiff states that while being escorted to the infirmary and without warning or provocation, Taylor jerked Plaintiff's arm above his head causing further injury.  Paper No. 1.

Plaintiff also alleges that on December 1, 2006, after Plaintiff verbally intervened in an assault by a correctional officer on another inmate, he was threatened by Officer Fordham. Subsequently, on an unspecified date, Fordham attempted to hit Plaintiff but was prevented from doing so by Officer Hooker.

Plaintiff states that during a prison shake down on December 12, 2006, a large number of correctional officers came to his cell, including Defendants Fordham, Reagan and Barnett.  Plaintiff advised the officers that he had a medical order to be handcuffed in the front.   The officers disregarded the order and handcuffed him in the back.  Fordham then assaulted Plaintiff by striking him in the back, kidney and side.   Plaintiff states that all supervisors left the tier in order to permit the assault to occur.  He further alleges that officers formed a barrier with their bodies outside his cell to prevent other inmates from witnessing the assault.

On December 27, 2006, Plaintiff was advised he was being transferred and would not be permitted to have any of his property.  Plaintiff later found that some of his property was missing.

2

Plaintiff states that after his transfer from JCI to NBCI, Defendant Beal tampered with Plaintiff's outgoing mail.

## Standard of Review

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).  "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

**1.     Exhaustion**

The court must first examine Defendants' assertion that Plaintiff's claim concerning the December 12 incident should be dismissed in its entirety due to Plaintiff's failure to exhaust

available administrative remedies[2]  The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Thus, the exhaustion provision plainly extends to Plaintiff's allegations.  His claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense.  *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*,

---

[2]  Defendants do not contend that Plaintiff failed to exhaust his administrative remedies as to his other allegations.

286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Process ("ARP") provided by the Division of Correction to its prisoners. If this request is denied, a prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office. *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

The facts regarding Plaintiff's efforts to exhaust his administrative remedies are in dispute. Defendants maintain that Plaintiff never initiated the administrative remedy process regarding the alleged December 12, 2006 assault. To the contrary, Plaintiff has provided, by way of declaration and record, evidence of his effort to file an administrative remedy as well as his efforts to contact Division of Correction officials directly concerning the assault.[3] Paper Nos. 1 and 32. Plaintiff states that he never received any response to these efforts to pursue administrative remedies and further states that in the past he has been prevented from accessing the administrative remedy process. Paper Nos. 1 and 32. Defendants contend that Plaintiff has fabricated the ARP because it does not contain the identifying number indicating that it had been received by the ARP coordinator. Paper No. 24. The court cannot discern based on the evidence before it whether Plaintiff submitted the ARP and it was not logged or whether he created the ARP for purposes of this litigation. As such, the court cannot find that Plaintiff failed to exhaust his "available" remedies or

---

[3] Defendants offer that Plaintiff's base file is missing and they are therefore without any documents concerning Plaintiff's efforts to bring the matter of the alleged assault to the attention of correctional officials outside of the ARP process. Paper No. 24.

that Defendants did not frustrate his efforts at exhausting same.  *See Taylor v. Barnett*, 105 F.Supp.2d  483, 486 (E.D. Va. 2000).   Defendants are not entitled to summary judgment on the exhaustion issue.

## 2.     Eighth Amendment

Plaintiff must confront Defendants' summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.[4]  This he has done as to the November 6 incident; there are genuine disputes of material fact concerning this incident. Defendants maintain that Plaintiff's injuries arose out of their good faith efforts to restore order after Plaintiff punched Williams in the face.  Paper No. 24.  Plaintiff concedes that he punched Williams; however, he claims that was already subdued and handcuffed when Williams then punched him in the face with her handcuffs and kicked and stomped his back, sides, and head.  Additionally, the

---

[4]A claim of excessive force involves both objective and subjective elements.  *See Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998).  The subjective element is analyzed to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)  The objective element is met if the officers' actions were harmful enough to offend contemporary standards of decency.  *Id*. at 8.  In making these determinations, a court must look at the need for the application of force, the relationship between the need and the amount of force applied, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates as  reasonably perceived by prison officials, and any efforts made to temper the severity of the response.  *See Whitley v. Albers*, 475 U. S. 312, 321 (1986).

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment.  *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981).  However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their  offenses against society."  *Id*.

In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).  Thus, in an Eighth Amendment claim based on prison conditions, a prisoner must prove that prison officials acted with "deliberate indifference."  *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (quotations omitted).  Specifically, prison officials must consciously disregard a substantial risk of serious harm to an inmate's health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 32 (1993). Moreover, on an Eighth Amendment challenge plaintiff must "produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."  *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

parties dispute the events concerning Plaintiff's escort to the infirmary.  Defendants maintain that Plaintiff lunged away from the escorting officer resulting in his handcuffs being "jerked."  By way of affidavit, Plaintiff states that Taylor's  jerking of his handcuffs was entirely unprovoked.  Paper Nos. 1 and 32.  In short, questions remain as to the amount of force applied, the necessity for the force, and the injuries sustained as a result of the altercation.  Further, if the force were applied in the manner alleged by Plaintiff, qualified immunity would not apply.

As to the December 12 incident, even assuming the assault occurred as alleged, Plaintiff has failed to demonstrate he was injured as a result.  In determining whether injuries suffered by a prisoner at the hands of prison guards are *de minimis*, there are a number of factors to be considered.  These factors include: 1) the context in which the injuries were sustained, *i.e.*, was there a disturbance which required the use of force;[5] 2) did the prisoner seek medical care;[6] 3) were any injuries documented in medical records generated shortly after the incident;[7] and 4) are the documented injuries consistent with the prisoner's allegations of excessive force or are they more consistent with application of the amount of force necessary under the circumstances of the particular incident.[8]

Plaintiff was evaluated by medical staff on December 19 and 28, 2006.  Paper No. 24, Ex. E, p. 65-68.  No complaints arising from an assault were reported by Plaintiff and no objective findings of an assault were made.  Plaintiff was again seen by the medical department on January 3, 2007,

---

[5] *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998).

[6] *Riley v. Dorton*, 115 F.3d 1159, 1167 (4th Cir. 1996).

[7] *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994).

[8] *Taylor v. McDuffie,* 155 F.3d 479, 484 (4th Cir. 1998).

and no apparent injuries were noted.  No allegations of an assault were made by Plaintiff, other than his continued complaint of shoulder pain due to his having been pulled up by his handcuffs, presumably during the November 6 incident. *Id*., p. 61-64.  Accordingly, Plaintiff has failed to bring forth any evidence to support that he was injured as a result of the December 12 incident, and summary judgment is appropriate as to this claim.

To the extent Plaintiff's excessive force claims are also construed as failure to protect claims as to the supervisory Defendants Frank Sizer, Captain Holland, D. Whitaker, Sgt. Perry, Lt. Faison, Sgt. Wilson, and Warden Smith, his claims fail. Deliberate indifference in the context of a failure to protect claim means that Defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837.  Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy.  *See Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) ("[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact  that prison officials were therefore deliberately indifferent to his safety.").

Plaintiff's allegations against the supervisory Defendants are insufficient.  Whatever the circumstances surrounding the November incident, it is clear that the incident was spontaneous in nature and precipitated by Plaintiff's punching a female correctional officer in the face.  As noted, *supra*, Plaintiff has failed to satisfy the objective component concerning the December incident. A prison official is deliberately indifferent when he possesses actual, subjective knowledge of an

excessive risk of harm to the prisoner's safety and disregards it. *See Farmer*, 511 U.S. at 837-39. There is simply no evidence before the court that Defendants were deliberately indifferent to Plaintiff's safety.

Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Plaintiff has failed to submit evidence to support his claim, or to put the material fact of this case--the failure to protect--in dispute. *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991). Accordingly, Plaintiff's claims against Frank Sizer, Captain Holland, D. Whiataker, Sgt. Perry, Lt. Faison, Sgt. Wilson, and Warden Smith shall be dismissed.

### 3.    Strip Search

Plaintiff also claims that during the December 12 incident he was subjected to an improper strip search. Paper No. 1. The search described by Plaintiff does not rise to the level of an atypical and significant hardship under *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Under the Fourth Amendment, a search is reasonable if the need for the search outweighs the invasion of personal rights that the search entails. *See Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (courts should consider the scope of intrusion, the manner in which the search is conducted, the justification for the search, and the place in which it is conducted). The *Bell* Court specifically upheld a policy providing for a visual body cavity search of prison inmates, finding that prisons are places fraught with serious security dangers in which inmates attempt to secrete contraband by concealing it in body cavities. *Id.* Strip searches of convicted persons do not amount to a *per se* violation of privacy rights, as long as the genitals of the persons being searched are not involuntarily exposed to members of the opposite sex. *See Lee v. Downs*, 641 F.2d 1117 (4th Cir. 1981). According to Plaintiff, during a shake down

of his cell he was instructed to bend over and spread his buttocks for a visual inspection.  Paper No.

1.  Plaintiff's claim does not state a constitutional violation.

### 4.        Property Claim

Plaintiff claims that when he was transferred from the Jessup Correctional Institution to the

North Branch Correctional Institution unspecified property was lost or destroyed.  Paper No. 1.  In

the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to

an adequate post-deprivation remedy.  *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981),

*overruled on other grounds by Daniels v. Williams*, 474 U. S. 327 (1986).  The right to seek

damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[9]

*See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[10]

### 5.        Conspiracy

Plaintiff's claims that Defendants Fordham, Reagan and Barnett repeatedly threatened and

harassed him are subject to dismissal.  Fordham denies any knowledge of Plaintiff and avers that he

did not participate in a mass shake down of JCI's A building. Moreover, Fordham was not on duty

the date of the alleged shake down as maintained by Plaintiff.  Paper No. 24, Ex. 10 and 17.

Defendant Barnett denies knowing Plaintiff and has no specific recollection of being part of a shake

down on December 12. *Id.*, Ex. 11.  Defendant Reagan avers that he represented the institution in a

disciplinary hearing against Plaintiff stemming from the November incident and as a result of the

disciplinary hearing Plaintiff received 210 days of disciplinary segregation and lost 180 days of

---

[9]Plaintiff may avail himself of remedies under the Maryland's Tort Claims Act.

[10]Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.

visitation.  *Id.,* Ex. 12.  Defendants Fordham, Reagen and Barnett each deny being part of a

conspiracy to threaten inmates.  *Id*., Ex. 10-12.

A conclusory allegation of a conspiracy such as is made in this case is insufficient to state a

claim.  *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2nd Cir. 1997) (unsupported claim of

conspiracy to issue false disciplinary reports fails to state claim); *Manis v. Sterling*, 862 F.2d 679,

681 (8th Cir. 1988) ("Allegations of conspiracy . . . must be pled with sufficient specificity and

factual support to suggest a meeting of the minds.") (quotation omitted).  *Langworthy v. Dean*, 37 F.

Supp.2d 417, 424-25 (D. Md. 1999).  Defendants are entitled to summary judgment on this claim.

**6.     Access to Courts**

Plaintiff claims that while he was housed at the North Branch Correctional Institution, Lt.

Beal withheld Plaintiff's outgoing legal mail.  Paper No. 1.  Prisoners have a constitutionally

protected right of access to the courts.  *See Bounds v. Smith*, 430 U. S. 817, 821 (1977).  However,

*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines

capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it

requires to be provided are those that the inmates need in order to attack their sentences, directly or

collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other

litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of

conviction and incarceration. *Lewis v. Casey*, 518 U. S. 343, 355 (1996).  "Ultimately, a prisoner

wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual

injury' to 'the capability of bringing contemplated challenges to sentences or conditions of

confinement before the courts.'  *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) *quoting*

*Lewis*, 518 U.S. at 355.  "The requirement that an inmate alleging a violation of *Bounds* must show

actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349.

Assuming Lt. Beal failed to mail documents Plaintiff wished to file with the court, Plaintiff has failed to demonstrate how he was injured by that action. Plaintiff was ultimately able to bring this action and another action.[11] Sometime in May, 2007 he was returned from Maryland to Connecticut, where he has been able to continue to prosecute this claim.[12] Plaintiff has failed to allege, much less demonstrate, that any interference with his mail resulted in an injury to him. Accordingly, Plaintiff's claim of denial of access to the courts shall be dismissed.

**Conclusion**

Defendants' motion for summary judgment as to the November 6, 2006 incident shall be denied. The motion is granted in all other respects. Plaintiff's claims against Defendants Fordham, Reagan, Frank Sizer, Captain Smith, Captain Holland, D. Whitaker, Lt. Beal, Willie Taylor, Sgt. Perry, Lt. Faison, Sgt. Wilson, Captain John Doe, Barnett, and Warden Smith are dismissed. Plaintiff's Motion for Appointment of Counsel (Paper No. 36) shall be granted. A separate order follows.

September 3, 2009                          _____/s/_____
Date                                       DEBORAH K. CHASANOW
                                           United States District Judge

---

[11] *Elliott v. Warden*, WDQ-07-992 (D. Md. 2007) (claiming interference with his mail).
[12] Plaintiff is serving a Connecticut sentence and was temporarily housed in Maryland pursuant to the Interstate Corrections Compact.